IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**
**Plaintiff,**

v.

**JOSHUA BURGARD,**
**Defendant.**                                                               **No. 10 - CR - 30085 DRH**

### ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is defendant Joshua Burgard's Motion to Suppress Defendant's Cell Phone and All Fruits of this Evidence, and Memorandum in Support (Doc. 22). The Government filed its response and memorandum (Docs. 23 & 24), and a hearing was conducted on January 4, 2011 (Doc. 30; Mot. Hr'g). The Motion to Suppress raised the issue of whether a delay of six days between the seizure of Defendant's cell phone based on probable cause and securing a search warrant for the phone constitutes an unreasonable seizure under the Fourth Amendment.

Having taken into consideration the arguments made by both sides, the Court finds that the seizure was not unreasonable. Defendant had disclosed the contents of the phone to a third party, and the law-enforcement officers were diligent in securing the warrant. The Court also finds that the officers relied in good faith on the

warrant issued by the magistrate. Thus Defendant's Motion to Suppress (Doc. 22) is **DENIED**.

## II. Background

Defendant was indicted on two counts of knowingly receiving and attempting to receive, between December 1, 2009, and January 30, 2010, visual depictions of minors engaging in sexually explicit conduct (Doc. 1). ***See* 18 U.S.C. § 2252(a)(2), (b)(1)**. Defendant moves to suppress the cell-phone evidence recovered by law-enforcement officers, arguing that the officers did not have Defendant's consent to search the phone, the six-day delay before the officers secured a warrant substantially intruded on Defendant's Fourth Amendment interests, and the seizure of the cell phone exceeded the limited purpose of a *Terry* stop. As to the first argument, the Government concedes there was no consent (Doc. 24, p. 7). And as to the third, Defendant concedes the existence of probable cause, taking the seizure beyond a *Terry* stop (Mot. Hr'g). Thus only the second argument is at issue.

The facts are as follows. On Wednesday, January 6, 2010, a confidential informant ("CI") told Sergeant Louis Wilson of the Smithton Police Department that he had seen images of young, nude girls on Defendant's cell phone the day before. He believed the girls were about 14 years old, possibly younger. Defendant had bragged to him about having sexual intercourse with the girls. The CI was able to describe the images. He knew the girls' first names and the towns they were from. The CI told

Wilson that Defendant currently had one working cell phone and that the images of the girls were on that phone. He added that Defendant changed cell phones regularly and had gone through three in a short period of time. The CI also disclosed that he would be with Defendant later that night.

Before the CI came to him, Wilson had spoken with minor female "B.S.", who told him Defendant was having sex with another minor and had been hitting on B.S. and her minor girlfriends. Another girl, "K.D.", told Wilson that she had had sex with Defendant when she was 14 and he was 19. Wilson had seen Defendant before in his yard with girls as young as 11, and other police officers in Smithton had heard in the community that Defendant was sexually involved with young girls.

At this point, knowing the CI and Defendant were friends, Wilson was concerned the CI would have a change of heart and tip Defendant off. Defendant could easily delete the images from his phone. So Wilson arranged to have the CI send a text message that evening when he and Defendant were together. The CI followed the plan. That night Wilson received a text message indicating the CI was with Defendant and that Defendant had his cell phone. Wilson stopped their vehicle at around 9:25 p.m.[1] Defendant got out of the car and started to leave, but Wilson stopped him. Wilson asked whether the phone in Defendant's hand was his. When Defendant responded it was, Wilson told him to hand it over.

Wilson faxed his report about the seizure of the phone to FBI Cybercrimes

---

[1] Although the parties call this a traffic stop (Doc. 24, p. 2) or a *Terry* stop (Doc. 22, p. 6), the actual stop was arranged between Wilson and the CI. It was a stop based on probable cause.

Task Force Agent Mark Krug within about 12 hours to have Krug fill out the federal warrant application. Krug split time between his work for the FBI and his work as a detective in Collinsville, Illinois. At the time, he was working on an armed-robbery investigation and found Wilson's report Thursday afternoon. Needing more information, however, he called and left a message for Wilson. The two then spoke after hours that evening to discuss the details of the seizure. Krug asked for additional reports to be sent. On Friday, Krug worked on the robbery investigation pursuant to his duties with the Collinsville Police Department.

It took Krug some time to prepare the application because he had to review the reports from Wilson. He also had not drafted a federal search-warrant application for a cell phone before. Krug was the only full-time investigator with the Cybercrimes Task Force; the other investigators worked part-time and only came in on Wednesdays. Krug worked on the cell-phone affidavit Sunday evening on his own time, and faxed it to the U.S. Attorney's Office Monday. Assistant U.S. Attorney Nicole Gorovsky was in a hearing that day. Gorovsky finished the warrant application and submitted it to the magistrate on Tuesday, January 12. The search warrant was issued that day. No additional investigation was done between the time the phone was seized and the warrant application was submitted to the magistrate.

Upon receiving the signed warrant, Krug searched Defendant's cell phone and found numerous sexually explicit images of young girls.

### III. Discussion

The central issue of Defendant's suppression motion is whether the delay of six days between the seizure of Defendant's cell phone based on probable cause and securing a search warrant for the phone constitutes an unreasonable seizure under the Fourth Amendment. If it is unreasonable, the evidence found ordinarily must be excluded, unless the officers can be found to have relied in good faith on the warrant. But before discussing the six-day delay, the Court will briefly consider the seizure of the cell phone itself.

**A. Warrantless Seizure**

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In most circumstances, the Government must obtain a warrant based on probable cause in order for a seizure of property to be reasonable. ***See United States v. Rivera*, 825 F.2d 152, 156 (7th Cir. 1987) ("Searches and seizures undertaken without warrants are presumed arbitrary and unreasonable . . . .")**. One exception is that a container may be seized pending issuance of a warrant if there is probable cause to believe it holds contraband or evidence of a crime and if the "exigencies of the circumstances demand it . . . ." ***United States v. Place*, 462 U.S. 696, 701 (1983)**. Probable cause exists when the totality of circumstances show "there is a fair probability that contraband or evidence of a crime will be found in a particular

place." *Illinois v. Gates*, **462 U.S. 213, 238 (1983)**. Exigent circumstances exist when law-enforcement officers have an objectively reasonable "fear [of] imminent destruction of the evidence." *Rivera*, **825 F.2d at 156**.

Although he argued in the Motion to Suppress that the seizure of the cell phone was not justified (Doc. 22, p. 2), Defendant appeared to concede during the motion hearing that the seizure of the cell phone was based on probable cause. For the record, the Court does find that probable cause existed based on the CI's information given to Wilson. The CI had just seen the images the day before on Defendant's cell phone, was able to describe the images, and he knew the first names of two of the girls and their residences. The CI was a citizen, and evidence from a "'citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves.'" *Edwards v. Cabrera*, **58 F.3d 290, 294 (7th Cir. 1995) (quoting *United States v. Towns*, 913 F.2d 434, 441 (7th Cir. 1990))**. Moreover, Wilson had previously spoken with two girls who knew about, or had even participated in, underage sexual activity with Defendant. Wilson had also seen Defendant in his yard with girls as young as 11, and other police officers in Smithton had heard in the community that Defendant was sexually involved with young girls. Based on this information, there was a fair probability that evidence of crime would be found on Defendant's only working cell phone.

The Court also finds exigent circumstances justified the warrantless seizure. Wilson was concerned the CI, who was friends with Defendant, would have a change

of heart and tip Defendant off. Defendant might have deleted the images or destroyed the phone before a warrant could be obtained. The CI said Defendant changed cell phones regularly. So Wilson arranged a plan with the CI to seize the phone the same evening. On these facts, Wilson's fear of imminent destruction of evidence was objectively reasonable.

Since both probable cause and exigent circumstances existed, the seizure of Defendant's cell phone pending issuance of a warrant was reasonable.

**B. Fourth Amendment Interests**

Courts have addressed when a seizure of property based on reasonable suspicion may violate a defendant's Fourth Amendment rights. In ***United States v. Place***, the Supreme Court stated that, absent probable cause:

> [T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursued their investigation.

**462 U.S. 696, 709 (1983)**. Whether based on reasonable suspicion or probable cause, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" ***United States v. Jacobsen*, 466 U.S. 109, 124 (1984)**. "[E]ven a seizure based on probable cause is unconstitutional if the police act with

unreasonable delay in securing the warrant." ***United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998);** *see also **United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009); *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993)**.

The reasonableness of a detention is determined "in light of all the facts and circumstances. That is, on a case-by-case basis." ***United States v. Mayomi*, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)**. Further, the determination must reflect a "careful balancing of governmental and private interests." ***Soldal v. Cook County*, 506 U.S. 56, 71 (1992);** *see also **Place*, 462 U.S. at 703 ("We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.")**.

Defendant argues that the six-day delay here was an unreasonable intrusion on his Fourth Amendment interests, citing ***United States v. Ganser*, 315 F.3d 839 (7th Cir. 2003)** (Mot. Hr'g). In ***Ganser***, the Seventh Circuit found that a delay of four days before postal authorities delivered the defendant's mail was reasonable. ***Ganser*, 315 F.3d at 844**. But in ***Ganser*** the mail was detained based on reasonable suspicion. ***Id.* at 843**. The court therefore applied the general reasonable-suspicion analysis, even though a canine sniff had raised reasonable suspicion to probable cause during the detention. ***Id.*** The court did not specifically address a detention based on probable cause. Instead, it found that the postal authorities delivered the mail at the earliest possible time, given the mail system. ***Id.* at 844.**

Page 8 of 14

Here the detention involved exigent circumstances. In addition, the facts involve disclosure of the contents of the cell phone to a third party. In light of all the facts and circumstances, the Court does not find *Ganser* wholly applicable.

In *United States v. Martin*, the Second Circuit found that an 11-day delay before police obtained a warrant to search a package was not unreasonable. **157 F.3d 46, 54 (2d Cir. 1998)**. The 11 days included two weekends and a holiday. *Id.* The defendant had revealed the contents of the package to a third party, "weakening his claim to Fourth Amendment privacy." *Id.* The defendant further weakened his privacy interests by giving control of the package to the third party. *Id.* Finally, the seizure did not restrain the defendant's liberty interests by disrupting his travel plans. *Id.*

By contrast, the Eleventh Circuit has found a 21-day delay unreasonable when the law-enforcement officers "simply believed there was no rush." *United States v. Mitchell*, **565 F.3d 1347, 1353 (11th Cir. 2009)**. As part of a national investigation by Immigration and Customs Enforcement ("ICE") into child pornography, an ICE agent and an FBI agent visited the defendant's home. *Id.* **at 1348–49**. When the defendant admitted that he had child pornography on his desktop computer, the ICE agent removed the hard drive to conduct a search of its contents. *Id.* **at 1349**. Then the agent left for a two-week training course and did not apply for a search warrant until 21 days later. *Id.* The court found that the defendant had a substantial possessory interest in the hard drive, since computers store personal information.

*Id.* **at 1351**. Defendant's possessory interest was weakened by his admission to the agents, but "not altogether eliminated," because computers are used to store noncontraband information and because the defendant might have been lying or mistaken. *Id.*

Perhaps more importantly in *Mitchell*, the agents did not have a compelling justification for the delay. *Id.* Two and a half days passed before the ICE agent left for his training course. *Id.* The warrant affidavit was mostly boilerplate. *Id.* And the FBI agent could have prepared the warrant. *Id.* The ICE agent said he felt there was not a rush, since the defendant had admitted to the contents of the hard drive. *Id.* The U.S. Attorney argued that this ICE agent was the only one in the district qualified to conduct the search. However, the court doubted that explanation; the seizure was part of a nationwide investigation by ICE, so there must have been another agent with similar qualifications. *Id.* **at 1352**. Thus the court held that the 21-day delay was unreasonable.

Where a police officer acted with diligence and was diverted by other cases, however, the Eleventh Circuit found even a 45-day delay to be reasonable. ***United States v. Vallimont*, 378 F. App'x 972, 976 (11th Cir. 2010)**. In *Vallimont*, a police investigator seized the defendant's computer while investigating sexual-abuse allegations in defendant's home. *Id.* **at 974**. Compared with *Mitchell*, the defendant had a lesser privacy interest in his computer because he had revealed its contents to the child and given her access to it. *Id.* **at 975–76**. In terms of police diligence, there

were "overriding circumstances" that diverted the officer to other cases, and law-enforcement resources were overwhelmed. *Id.* **at 976**. In addition, the officer continued to prepare the warrant and investigate during the 45 days. *Id.* Thus *Vallimont* distinguished *Mitchell* and held that the 45-day delay before obtaining a warrant was not unreasonable. *Id.*

Here, the nature and quality of the intrusion on Defendant's Fourth Amendment interests was less severe than in the foregoing cases. The Court agrees with Defendant that people ordinarily have a high expectation of privacy in their cell phones (Doc. 22, p. 5). A cell phone is like a computer and contains personal information. *See Mitchell*, **565 F.3d at 1351**. Yet the duration of detention was only two days longer than was found reasonable in *Ganser*, and *Ganser* was primarily based on reasonable suspicion rather than probable cause. The delay was also much shorter than the 11 days upheld in *Martin*. Furthermore, similar to *Martin*, *Mitchell*, and *Vallimont*, Defendant weakened his Fourth Amendment interests by showing the contents of the phone to a third party, the CI, and bragging about having sex with the girls.

The Court also finds that the delay of six days had more to do with a lack of resources than a lack of diligence in obtaining the warrant. The Court agrees with Defendant that, in principle, the law-enforcement agents could have applied for the warrant over the weekend (Mot. Hr'g). The magistrate would have been available then. But unlike *Mitchell*, there is no evidence that the agents here simply believed

there was no rush. The facts more closely resemble ***Vallimont***, where the police officer was diverted to other cases and law-enforcement resources were overwhelmed. Krug was diverted by an armed robbery on Friday, January 8. He was also the only Cybercrimes Task Force agent working during that time, so there was not another agent who could have prepared the warrant. ***See Mitchell*, 565 F.3d at 1351**. Adding to the complications, Krug had not drafted a federal cell-phone warrant application before. And the Assistant U.S. Attorney was in a hearing on Monday, January 11, when she received the draft from Krug. In ***Vallimont***, the police officer continued investigating and preparing the warrant. Here, Wilson and Krug continued working on the warrant application. Krug and Wilson spoke after-hours, and Krug had to request additional reports from Wilson. It is not clear when Krug received those reports, whether Friday or Saturday, but Krug wrote the warrant application Sunday evening.

Thus the Court concludes that the six days here was not an unreasonable delay in securing the warrant. Defendant weakened his Fourth Amendment privacy interests by disclosing the phone's contents to the CI, and the law-enforcement agents continued working on the warrant after the seizure of the cell phone.

**B. Reliance in Good Faith**

The Government argues, in the alternative, that Krug relied in good faith on the warrant issued by the magistrate when he searched the phone, so the evidence he found should not be suppressed (Doc. 24, pp. 8–9).

Evidence that is obtained in violation of the Fourth Amendment may be excluded. ***United States v. Hills*, 618 F.3d 619, 633 (7th Cir. 2010) (citing *Arizona v. Evans*, 514 U.S. 1, 11 (1995))**. Nevertheless, such evidence may be admitted if it was obtained by "officers acting in good faith on their belief that the warrant and their execution of it were valid." ***Id.* (citing *United States v. Leon*, 468 U.S. 897, 919–21 (1984))**. The fact that officers obtained a warrant is "prima facie evidence of good faith." ***United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009)**.

Defendant does not contest Krug's good faith in relying on the warrant issued by the magistrate, and the Court finds no reason to doubt it either. Krug waited until he obtained the warrant before conducting his search of the cell phone. The Court also notes that consulting with the Assistant U.S. Attorney, as Krug did, is additional evidence of good faith. ***United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010)**. Therefore, even if there was an unreasonable delay in securing the warrant, Krug acted in good faith on his belief that the warrant and his execution of it were valid. The evidence obtained from the cell phone may be admitted.

Finally, given the Court's conclusion that the cell-phone evidence is admissible either as a reasonable search and seizure under Fourth Amendment standards or based on good-faith reliance on the warrant, we do not reach the Government's alternative argument that discovery of the evidence was inevitable (Doc. 24, p. 8).

### IV. Conclusion

In sum, the Court holds that Defendant's Fourth Amendment possessory interests were not infringed by the six-day delay between the time his cell phone was seized and when the warrant was secured. In the alternative, the Court holds that the Government agent relied in good faith on the warrant issued by the magistrate. Accordingly, the Motion to Suppress Defendant's Cell Phone and All Fruits of this Evidence, and Memorandum in Support (Doc. 22) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 2nd day of February, 2011.

David R. Herndon
2011.02.02
15:17:20 -06'00'

**Chief Judge
United States District Court**